IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:22-CV-43-FL

| | |
|---|---|
| JOSHUA D. AKERS, DEWAYNE BARBER, TIMOTHY L. BASS, JESSICA BYRD, JOSEPH BYRD, ANDY CABRERA, JULIAN B. CARR, DONALD CARTER, JERRY CASHWELL, JOSHUA DAVID, ALPHUS FANN, JOSUPH FRISCHMANN, CHRISTOPHER GODWIN, CRYSTAL GORE, DOYLE GRADY, CHRISTOPHER HARDISON, ANDREW HIGH, SCOTT HODGES, DUSTIN IRVIN, JAMES A. JONES, II, LORI C. MARINELLI, JACOB F. MATTHEWS, RHONDA D. MEDLIN, KEVIN PERRY, BRANDON R. POPE, ERIC POPE, LYNWOOD T. POPE, WILLIAM QUINN, RONIE T. ROBINSON, JR., DILLON SMITH, MARCUS SMITH, PATRICK A. SNELL, ROBERT STROUD, and HEATHE WILLIAMS, Plaintiffs, v. COUNTY OF SAMPSON, Defendant. | ORDER |

This matter is before the court on defendant's motion to dismiss for failure to state a claim (DE 48). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiffs, who are current or former law enforcement officers of the Sampson County Sheriff's Office ("SCSO"), commenced this action against defendant in the Superior Court of Sampson County, asserting claims for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. 201 et seq. ("FLSA") and for unpaid wages and benefits under the North Carolina Constitution. Plaintiffs seek compensatory damages, attorney's fees, interest, and costs.

Defendant removed to this court, and plaintiffs filed the operative amended complaint asserting the same claims with additional factual allegations.[1] Thereafter, defendant filed the instant motion seeking dismissal of plaintiffs' FLSA claim on the basis that plaintiffs are not employed by defendant and plaintiffs are exempt personal staff under the FLSA. In the alternative, defendant seeks to dismiss a portion of plaintiffs' FLSA claim as time barred. Defendant also argues that plaintiffs' claim under the North Carolina Constitution fails as a matter of law.

## STATEMENT OF THE FACTS

The facts alleged in the complaint[2] pertinent to the issues raised by the instant motion may be summarized as follows.

Plaintiffs are 34 current or former law enforcement officers with SCSO, holding positions such as deputy sheriff, lieutenant, sergeant, captain, investigator, and detective. Plaintiffs assert that they were, during all relevant times, jointly employed by the SCSO and by defendant, County of Sampson. Concerning joint employment, plaintiffs allege the following.

---

[1] The court stayed scheduling conference activities upon defendant's filing of a motion to dismiss plaintiffs' original complaint. Following plaintiffs' filing of the operative amended complaint, the court denied as moot defendant's initial motion to dismiss.

[2] Hereinafter, all references to the complaint or "compl." in citations are to the operative amended complaint (DE 47).

"SCSO's sole purpose [is] to provide law enforcement and other services to [d]efendant." (Compl. ¶ 47). Defendant funds "all operations of SCSO including issuing of payment to SCSO employees for their work as law enforcement officers and agents for SCSO." (Id. ¶ 48). Defendant owns the building, vehicles, equipment, and materials used by SCSO. (Id. ¶¶ 49-51, 61).

In addition, "responsibility for issuing payment to [p]laintiffs for their work as law enforcement officers and agents for SCSO has resided with [d]efendant." (Id. ¶ 52). Plaintiffs have "recorded their hours worked on timesheets supplied by [d]efendant and [d]efendant, not SCSO, has determined the amount and method of payment to be issued to SCSO's law enforcement officers and agents." (Id. ¶ 53). "Defendant has dictated the rate of pay for all law enforcement officers and agents employed with SCSO," as well as the number of employees and their start dates. (Id. ¶ 54-56).

"Defendant has dictated whether Plaintiffs are paid for hours worked between 160 and 171 hours per 28-day work period." (Id. ¶ 57). "SCSO has never had the authority to decide whether law enforcement officers and agents employed with SCSO are paid for these hours or any other hours." (Id.). Defendant also has been responsible for payment of all payroll taxes, health insurance, and workers' compensation benefits for plaintiffs, as well as maintenance of their personnel files. (Id. ¶¶ 58-60).

With respect to pay policies, plaintiffs allege that a 2011 personnel resolution adopted by defendant establishes that "non-exempt employees," such as plaintiffs, "will be paid by Defendant at a straight time rate for hours up to the FLSA established limit," which is 171 hours during a 28-day work period. (Id. ¶¶ 68-70). "Any hours worked over 171 hours during a 28 day pay cycle would qualify as overtime and Plaintiffs would be paid or granted compensatory time at 1.5 times their hourly rate for their overtime work." (Id. ¶ 71).

3

According to plaintiffs, until approximately November of 2020, defendant did not pay plaintiffs "for hours worked between 160 and 171 hours in a 28 day pay cycle," despite repeated requests from the Sheriff of Sampson County that defendant do so. (Id. ¶¶ 72-73). Defendant allegedly "has altered [p]laintiffs' timesheets by deleting hours recorded by [p]laintiffs for work performed between 160 and 171 hours in a 28 day pay cycle." (Id. ¶ 74). Defendant also "has deducted one hour per shift for lunch break, regardless of whether plaintiffs actually worked during their meal break." (Id. ¶ 75). Defendant also at all times has "forced [p]laintiffs to accept compensatory time in lieu of payment in cash for any overtime worked." (Id. ¶ 76).

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B. Analysis

 1. FLSA

  a. Joint Employer

Defendant argues that plaintiffs' FLSA claim must be dismissed because defendant is not plaintiffs' employer. Defendant points to decisions by this court and others recognizing the holding by the North Carolina Supreme Court that "a sheriff's office is not a program or department of a county and . . . a deputy sheriff or employee of a sheriff's office is not a county employee." Young v. Bailey, 368 N.C. 665, 669–70 (2016); see, e.g., Myrick v. Atkinson, No. 4:20-CV-139-FL, 2021 WL 4927977, at *6 (E.D.N.C. Oct. 21, 2021) (quoting same, in context of analysis of breach of contract claim); Hines v. Johnson, No. 1:19CV515, 2020 WL 1516397, at *4 (M.D.N.C. Mar. 30, 2020) (noting, in context of 42 U.S.C. § 1983 claim, that "North Carolina common law unequivocally establishes that sheriff's deputies are employees of the sheriff, and are not county employees").[3] For the following reasons, the court disagrees that any of these authorities are controlling for purposes of plaintiffs' FLSA claim.

Section 206 of the FLSA requires "[e]very employer [to] pay to each of his employees . . . wages" at the minimum rates specified in the statute, 29 U.S.C. § 206(a), and § 207 prohibits employment for "a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).

"Consistent with the FLSA's remedial and humanitarian purpose, Congress adopted definitions of 'employ,' 'employee,' and 'employer' that brought a broad swath of workers within the statute's protection." Salinas v. Com. Interiors, Inc., 848 F.3d 125, 133 (4th Cir. 2017). "Congress

---

[3] Internal quotations are omitted from citations throughout this order, unless otherwise specified.

defined 'employee' as 'any individual employed by an employer,' 29 U.S.C. § 203(e)(1), describing this language as the broadest definition that has ever been included in any one act." Id. "And Congress defined 'employer' in a similarly expansive fashion, providing that an 'employer' is 'any person acting <u>directly or indirectly</u> in the interest of an employer in relation to an employee.' 29 U.S.C. § 203(d)." Id. at 133 (emphasis added in <u>Salinas</u>).

"[T]he striking breadth of these definitions brings within the FLSA's ambit workers who might not qualify as employees under a strict application of traditional agency law principles or under other federal statutes," <u>id.</u>, or under "contract law principles." <u>Schultz v. Cap. Int'l Sec., Inc.</u>, 466 F.3d 298, 304 (4th Cir. 2006). Through the definitions in the FLSA, "Congress . . . inten[ded] to ensure that the FLSA protects workers whose employment arrangements do not conform to the bounds of common-law agency relationships." <u>Hall v. DIRECTV, LLC</u>, 846 F.3d 757, 769 (4th Cir. 2017). Accordingly, "an entity may constitute an employer for purposes of the FLSA even if it is not an employer under other statutes." <u>Salinas</u>, 848 F.3d at 143. Likewise, the definition of "employee" "encompass a broader swath of workers than would constitute employees at common law." <u>Id.</u> at 137.

Joint employment under the FLSA turns on "one fundamental question: whether two or more persons or entities are not completely disassociated with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." Id. at 141. "In answering this question courts should consider six factors," hereinafter the "<u>Salinas</u> factors":

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

6

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Id. at 142-143. "[T]hese six factors do not constitute an exhaustive list of all potentially relevant considerations." Id. at 143. "To the extent that facts not captured by these factors speak to the fundamental threshold question that must be resolved in every joint employment case—whether a purported joint employer shares or codetermines the essential terms and conditions of a worker's employment—courts must consider those facts as well." Id. Likewise, "one factor alone can serve as the basis for finding that two or more persons or entities" are joint employers, "if the facts supporting that factor demonstrate that the person or entity has a substantial role in determining the essential terms and conditions of a worker's employment." Id. at 142. "This is particularly true at the pleading stage." Hall, 846 F.3d at 771.

Here, one factor alone serves as the basis for determining that defendant and SCSO allegedly are joint employers, where the facts alleged permit an inference that defendant "has a substantial role in determining the essential terms and conditions of a worker's employment." Salinas, 848 F.3d at 142. In particular, plaintiffs allege defendant "has not paid [p]laintiffs for hours worked between 160 and 171 hours in a 28 day pay cycle," even when the Sheriff of Sampson County "repeatedly requested" it. (Compl. ¶¶ 72-73). Defendant altered plaintiffs' timesheets "by deleting hours," (id. ¶ 74), and defendant deducted a lunch hour "regardless of whether [p]laintiffs actually worked during

7

their meal break." (Id. ¶ 75). Finally, defendant "forced [p]laintiffs to accept compensatory time in lieu of payment in cash for any overtime worked." (Id. ¶ 76). In this manner, plaintiffs not only allege facts permitting an inference of control by defendant over terms and conditions of plaintiffs' pay, but also actions overriding requests by the SCSO regarding those terms and conditions.

Additional alleged facts also bear upon the fundamental question "whether defendant shares or codetermines the essential terms and conditions of a worker's employment." Salinas, 848 F.3d at 143. These include allegations that defendant has "dictated the rate of pay," "dictated the number of employees employed with SCSO," and "dictated the start date" for new employees. (Compl. ¶¶ 54-56). The second and sixth Salinas factors are further triggered by defendant's supply of timesheets, issuance of paychecks, determination of the amount and method of payment, provision of health insurance, payment of payroll taxes, and maintenance of personnel files. (Compl. ¶¶ 52-53). The third, fifth, and sixth factors, further are implicated by defendant's ownership of buildings and equipment, funding of operations, and mutually dependent relationship between defendant and SCSO. (Id. ¶¶ 47-51, 61). In sum, the alleged facts permit an inference that defendant is a joint employer of plaintiffs.

Defendant's arguments to the contrary are unavailing. First, with respect to the law, defendant cites to many cases that are inapposite because they do not consider whether a defendant entity is an employer under the FLSA definitions. See, e.g., White v. Vance Cnty., N. Carolina, No. 5:19-CV-467-BO, 2020 WL 943893, at *2–3 (E.D.N.C. Feb. 26, 2020) (Title VII and § 1983); Bowman v. Reid, No. 5:14CV179-RLV, 2015 WL 4508648, at *3 (W.D.N.C. July 24, 2015) (Title VII and ADEA); see Salinas, 848 F.3d at 143 ("FLSA cases are not particularly transferrable to Title VII cases.").

Second, with respect to application of the Salinas factors, defendant points to "cases expressly finding that performing administrative tasks do not transform a defendant into a 'joint employer' with another agency or entity." (Reply (DE 51) at 6). Plaintiffs do not rely, however, solely on the performance of administrative tasks by defendant to establish joint employment. Defendant does not sufficiently take into account "all potentially relevant considerations" under the alleged facts. Salinas, 848 F.3d at 142. Cases cited by defendant are distinguishable due to a lack of allegations, as here, that the defendant "has a substantial role in determining the essential terms and conditions of a worker's employment" such as which hours are compensable. Salinas, 848 F.3d at 142; see, e.g., Martinez v. Mendoza, No. 5:17-CV-628-FL, 2018 WL 3762983, at *6 (E.D.N.C. Aug. 8, 2018) ("[P]laintiffs fail to allege that movants did more than process payroll statements in a ministerial fashion and provided shovels.").[4]

Defendant also contends that many of the employment-related tasks carried out by defendant on behalf of the SCSO are "those activities that the North Carolina General Statutes require it to perform," and these activities do not transform it into an employer of plaintiffs under North Carolina law. (Reply (DE 51) at 5-6). The court recognizes the statutory framework governing defendant's actions as they may bear upon plaintiffs' employment, e.g., N.C. Gen. Stat. §§ 153A-103, 153A-149(c)(18), along with the exclusive employment duties placed upon a sheriff by statute, e.g., N.C. Gen. Stat. § 153A-103(1). While these considerations are controlling for plaintiffs' state law claim, as set forth further below, they are not determinative of plaintiffs' FLSA claim, in light of the standards set forth in Salinas.

---

[4] Defendant also cites to several out-of-circuit cases, which do not consider the same "fundamental question" set forth in Salinas and which involve distinguishable facts and procedural posture. See, e.g., Spears v. Choctaw Cnty. Comm'n, No. CIV A 07-0275-CG-M, 2009 WL 2365188, at *6-8 (S.D. Ala. July 30, 2009) (considering seven factors, on summary judgment record, noting "[t]he sheriff also was the one who decided whether to award [plaintiff] additional overtime pay when [plaintiff] felt his paycheck did not fully compensate him").

9

In sum, plaintiffs have alleged sufficient facts permitting an inference that defendant is their employer under the FLSA, jointly with SCSO. Therefore, defendant's motion is denied in this part.

b. Personal Staff Exemption

Defendant argues that plaintiffs are excluded from FLSA coverage by virtue of the "personal staff" exemption in the FLSA definition of an employee. In particular, the FLSA defines "employee" to include an "individual employed by a . . . political subdivision of a state," other than an individual who is "selected by the holder of [a public elective office] to be a member of his personal staff." 29 U.S.C. § 203(e)(2)(c)(ii)(II). According to Department of Labor Regulations applying the FLSA, "[t]he statutory term 'member of personal staff' generally includes only persons who are under the direct supervision of the selecting elected official and have regular contact with such official." 29 C.F.R. § 553.11(b). "The term typically does not include individuals who are directly supervised by someone other than the elected official even though they may have been selected by the official." Id. In addition, "personal staff members must be appointed by, and serve solely at the pleasure or discretion of, the elected official." Id. § 553.11(c).

Although the United States Court of Appeals for the Fourth Circuit has not applied the personal staff exemption to an FLSA claim, the Third Circuit has held that "for an employee to be the personal staff of an elected official, he must work closely with the official in a sensitive position of trust and confidence." Clews v. Cnty. of Schuylkill, 12 F.4th 353, 361 (3d Cir. 2021). The Fourth Circuit has recognized that the "personal staff" exemption in Title VII "is essentially identical to that" in the FLSA. Brewster v. Barnes, 788 F.2d 985, 990 (4th Cir. 1986). There, the court held that a deputy sheriff did not fall within the personal staff exemption because she "did not occupy an intimate or high-level position in the Sheriff's Department, nor did she make policy decisions." Id. at 990-91.

10

In this case, plaintiffs have not alleged facts requiring application of the personal staff exemption, particularly where all inferences are drawn in plaintiffs' favor. Plaintiffs hold a variety of positions, none of which are described in the complaint as "high-level," or policy makers, id., or under "direct supervision of" the sheriff, or having "regular contact" with him. 29 C.F.R. § 553.11(b). Further, plaintiffs allege that "communications regarding policy and procedure have been disseminated from the Sheriff of Sampson County to [p]laintiffs' department wide rather than on an individual basis," suggesting a lack of intimacy characteristic of personal staff. (Compl. ¶ 63). Likewise, the sheriff "has not consulted [p]laintiffs, individually or collectively, on highly intimate or sensitive matters." (Id. at 64). These allegations preclude application of the exemption.

Defendant suggests it is significant that, under North Carolina law, a county government "lacks . . . supervisory . . . authority over deputy sheriffs." N.C. Gen. Stat. § 153A-103(1). However, supervisory authority, without more is not determinative of the personal staff exemption. Rather, personal staff must be under the "<u>direct</u> supervision of the selecting elected official <u>and</u> have <u>regular contact</u> with such official." 29 C.F.R. § 553.11(b) (emphasis added). North Carolina law does not mandate either requirement.

Defendant also notes that, under North Carolina law, it is clear that deputy sheriffs, "serve at the pleasure of the appointing officer," and that a sheriff "has the exclusive right to hire, discharge, and supervise employees in his office." (Def's Mem. (DE 49) at 14). These characteristics, however, are necessary, but not sufficient, to satisfy the personal staff exemption. 29 C.F.R. § 553.11(c). Similarly, defendant points out that deputy sheriffs are not covered under N.C. Gen. Stat. § 153A-99, which protects other county employees from "political or partisan coercion" and "restrict[ions] [on] political activities while off duty." (Def's Mem. (DE 49) at 15). Lack of protection from political

coercion is one characteristic, but not in itself sufficient, to establish the exclusion for "member of personal staff" under the FLSA. See 29 C.F.R. § 553.11(b)-(c).

Critically absent in this case are any allegations permitting an inference that plaintiffs were "under the direct supervision of the selecting elected official and have regular contact with such official." Id. § 553.11(b). Likewise absent are allegations that they "work closely with" the sheriff in "a sensitive position of trust and confidence," Clews, 12 F.4th at 361, or that they "occupy an intimate or high-level position" or made "policy decisions." Brewster, 788 F.2d at 990-91.

Accordingly, the personal staff exemption to the FLSA does not bar plaintiffs' claim. That part of defendant's motion relying on this exemption thus is denied.

      c.      Statute of Limitations

Defendant argues that a two-year statute of limitations, rather than a three-year statute of limitations, applies to plaintiffs' claim, because plaintiffs have not alleged facts giving rise to a plausible inference of a willful violation of the FLSA. The court disagrees.

The FLSA provides a two-year limitations period, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "'[W]illful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). "[I]t is generally understood to refer to conduct that is not merely negligent." Id. Instead, the standard is met if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id.

Here, plaintiffs have alleged sufficient facts to give rise to a plausible inference that defendant willfully violated the FLSA, triggering the three-year limitations period. Plaintiffs allege defendant "has not paid [p]laintiffs for hours worked between 160 and 171 hours in a 28 day pay cycle," even

12

when the Sheriff of Sampson County "repeatedly requested" it. (Compl. ¶¶ 72-73). Defendant altered plaintiffs' timesheets "by deleting hours recorded by plaintiffs for work performed between 160 and 171 hours in a 28 day pay cycle." (Id. ¶ 74). Defendant did so allegedly despite having agreed to compensate plaintiffs "up to 171 hours worked" as established by the FLSA. (Id. ¶¶ 70-71). Defendant deducted a lunch hour, comprising "one hour per shift from [p]laintiff's entered time[,] regardless of whether [p]laintiffs actually worked during their meal break." (Id. ¶ 75). Finally, defendant "forced [p]laintiffs to accept compensatory time in lieu of payment in cash for any overtime worked." (Id. ¶ 76). These allegations permit a plausible inference that defendant's alleged violation of the FLSA was "not merely negligent," McLaughlin, 486 U.S. at 133, but rather the deliberate and intentional, when considered together, drawing all inferences in the light most favorable to plaintiffs.

Cases cited by defendant in support of a contrary conclusion are instructively distinguishable. For example, in Hurd v. NDL, Inc., No. CIV. CCB-11-1944, 2012 WL 642425 *6 (D. Md. Feb. 27, 2012), the court dismissed a claim for willful violation where a plaintiff alleged only that defendants "misclassif[ied] her as an exempt employee and den[ied] her overtime compensation." Id. In Moore v. Corell Elec. Contractors, Inc., No. 7:12CV00262, 2012 WL 5364201, at *1 (W.D. Va. Oct. 30, 2012), the court likewise dismissed a claim for willful violation where defendant allegedly "paid the plaintiffs less than the minimum hourly wage and less than [required] for overtime, failed to compensate employees for compensable travel, shirked its duty to keep accurate wage records, and did each of these things willfully." Allegations in those cases stand in contrast to allegations in the instant case of altering time records, and ignoring repeated requests by the sheriff for different pay accounting, despite alleged awareness of the requirements of the FLSA.

In so holding, the court does not preclude further consideration of factors relevant to willfulness upon a more complete record. In sum, that part of defendant's motion seeking dismissal of plaintiffs' claim premised upon a willful violation of the FLSA is denied.

2.  North Carolina Constitution

Defendant asserts plaintiffs' claim under the North Carolina Constitution fails as a matter of law because there is no precedent for such a claim premised upon unpaid wages and benefits, and plaintiffs are not employees of defendant under North Carolina law. The court agrees.

Article I, Section 1 of the North Carolina Constitution provides:

> We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, <u>the enjoyment of the fruits of their own labor</u>, and the pursuit of happiness.

N.C. Const. Art I, § 1 (emphasis added)

The North Carolina Supreme Court has recognized that the emphasized "fruits of labor" clause "applies when a governmental entity acts in an arbitrary and capricious manner toward one of its employees by failing to abide by promotional procedures that the employer itself put in place." <u>Tully v. City of Wilmington</u>, 370 N.C. 527, 535–36 (2018). The court in <u>Tully</u> held that

> to state a direct constitutional claim grounded in this unique right under the North Carolina Constitution, a public employee must show that no other state law remedy is available and plead facts establishing three elements: (1) a clear, established rule or policy existed regarding the employment promotional process that furthered a legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation. If a public employee alleges these elements, he has adequately stated a claim that his employer unconstitutionally burdened his right to the enjoyment of the fruits of his labor.

<u>Id.</u> at 536–37. Following <u>Tully</u>, the North Carolina Court of Appeals held in <u>Mole' v. City of Durham</u>, N.C. App. 583 (2021), that a plaintiff police sergeant had "pled a redressable violation of his employer's disciplinary procedures designed to further a legitimate governmental interest, in

14

Case 7:22-cv-00043-FL   Document 52   Filed 11/14/22   Page 14 of 17

satisfaction of the first two elements from Tully," where the plaintiff alleged "that he was given improper and inadequate notice of his pre-disciplinary hearing." Id. at 591.

Plaintiffs' allegations of unpaid wages and benefits do not fall within the holdings of either Tully or Mole'. Plaintiffs do not allege they were injured by a "fail[ure] to abide by promotional procedures that the employer itself put in place." Tully, 370 N.C. at 536. Nor do they allege a failure to follow "pre-disciplinary procedures . . . designed to further a legitimate government interest." Mole', 279 N.C. App. at 591. Likewise, plaintiffs do not cite, and the court has not identified, any North Carolina Supreme Court case recognizing a claim for unpaid wages and benefits arising under the "fruits of labor" clause of the North Carolina Constitution. Given that "[a]bsent a strong countervailing federal interest, the federal court should not elbow its way into [a] controversy to render what may be an uncertain and ephemeral interpretation of state law," the court declines to expand state law as a matter of first impression to recognize such a claim. Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007).

In addition, and in the alternative, plaintiffs have not alleged that they are employees of defendant, or that defendant is their employer, under North Carolina law. Rather, as noted above, in contrast to FLSA standards, it is well established under North Carolina law that "a sheriff's office is not a program or department of a county and . . . a deputy sheriff or employee of a sheriff's office is not a county employee." Young, 368 N.C. at 669–70. Thus, even if the North Carolina Constitution is broad enough to encompass a claim by public employees against their employers for unpaid wages or benefits, in some circumstances, plaintiffs' claim fails because they are not employees of defendant under North Carolina law.

Plaintiffs rely upon State v. Harris, 6 S.E.2d 854 (N.C. 1940). Harris, however, falls short of supporting plaintiffs' claim. In Harris, a criminal defendant successfully relied upon the "fruits of labor" clause, among others, to challenge the constitutionality of a state statute setting forth requirements for obtaining a license for a dry-cleaning business. Id. at 858. It did not address requirements for a civil claim for unpaid wages or benefits.

State v. Warren, 252 N.C. 690 (1960), also cited by plaintiffs, is similarly distinguishable. There, a criminal defendant unsuccessfully relied upon the "fruits of labor" clause, among others, in challenging the constitutionality of a statute requiring licensure for real estate brokers and salespersons. The court held that the "fruits of labor" clause did not create a defense to prosecution for unlicensed practice of real estate brokerage or sales. Id. at 697. While plaintiffs cite to language in Warren broadly describing the rights established by the North Carolina Constitution, this language alone and the holding of Warren does not set a precedent for a civil claim for unpaid wages or benefits.

Finally, plaintiffs rely upon Presnell v. Pell, 298 N.C. 715 (1979). There, however, the court held "plaintiff has no constitutional right to an administrative hearing [p]rior to discharge and that the procedures provided in [N.C. Gen. Stat. §] 115-34 accord plaintiff due process." Id. at 719. The court did not reference the "fruits of labor" clause or the North Carolina Constitution. While plaintiffs cite Presnell for its descriptions of a "liberty interest" under the due process clause of the United States Constitution, (Pl's Mem. (DE 50) at 24), this general discussion of liberty interest does not advance plaintiffs' claim for unpaid wages or benefits under North Carolina law.

In sum, plaintiffs fail to allege a claim under the North Carolina constitution. Therefore, defendant's motion in this part is granted.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is (DE 48) GRANTED IN PART and DENIED IN PART as set forth herein. Plaintiffs' FLSA claim is allowed to proceed. Plaintiffs' claim under the North Carolina Constitution is DISMISSED. In accordance with Federal Rule of Civil Procedure 12(a)(4), defendant must serve a responsive pleading to the amended complaint within 14 days of entry of this order.

SO ORDERED, this the 14th day of November, 2022.

LOUISE W. FLANAGAN
United States District Judge